# United States Court of Appeals for the Federal Circuit

---

**SUNPREME INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES, SOLARWORLD AMERICAS, INC.,**
*Defendants-Appellants*

---

2017-1338, 2017-1351

---

Appeals from the United States Court of International Trade in No. 1:15-cv-00315-CRK, Judge Claire R. Kelly.

---

Decided: June 14, 2018

---

NANCY NOONAN, Arent Fox, LLP, Washington, DC, argued for plaintiff-appellee. Also represented by JOHN M. GURLEY, DIANA DIMITRIUC QUAIA.

JUSTIN REINHART MILLER, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellant United States. Also represented by CHAD A. READLER, JEANNE E. DAVIDSON, REGINALD T. BLADES, JR.; PAULA S. SMITH, Office of the Assistant Chief Counsel, United States Bureau of Cus-

toms and Border Protection, United States Department of Homeland Security, New York, NY.

MAUREEN E. THORSON, Wiley Rein, LLP, Washington, DC, argued for defendant-appellant SolarWorld Americas, Inc. Also represented by TIMOTHY C. BRIGHTBILL, STEPHANIE MANAKER BELL, TESSA V. CAPELOTO, LAURA EL-SABAAWI, DERICK HOLT, USHA NEELAKANTAN, ADAM MILAN TESLIK,.

---

Before NEWMAN, LOURIE, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

SolarWorld America Inc. and the United States appeal from the judgment of the United States Court of International Trade in favor of Sunpreme Inc., concluding that the United States Customs and Border Protection exceeded its authority in reaching a determination that certain products imported by Sunpreme are covered by the scope of antidumping and countervailing duty orders on U.S. imports of solar cells from the People's Republic of China. Because the Court of International Trade lacked jurisdiction to hear Sunpreme's claims, we reverse.

BACKGROUND

I.

U.S. trade laws provide that "American industries may petition for relief from imports that are sold in the United States at less than fair value . . . , or which benefit from subsidies provided by foreign governments." *Allegheny Ludlum Corp. v. United States*, 287 F.3d 1365, 1368 (Fed. Cir. 2002) (citing 19 U.S.C. § 1675b (2000)). This relief is sought by filing an antidumping or countervailing duty petition before the U.S. Department of Commerce ("Commerce") and the U.S. International Trade Commission ("Trade Commission"). Following the filing of such a

petition, Commerce determines whether sales of the investigated merchandise have been made at less than fair value ("dumping") or whether a countervailable subsidy has been provided. 19 U.S.C. §§ 1673, 1671(a)(1). The Trade Commission determines whether the imported merchandise materially injures or threatens to materially injure the relevant domestic industry. *Id.* §§ 1673d(b)(1), 1671d(b)(1). If Commerce's and the Trade Commission's determinations are affirmative, Commerce issues an appropriate antidumping or countervailing duty order. *Id.* §§ 1673e(a), 1671e(a).

Commerce is charged with writing antidumping and countervailing duty orders that "include[] a description of the subject merchandise, in such detail as the administering authority deems necessary." *Id.* §§ 1673e(a)(2), 1671e(a)(2). The orders also provide the antidumping and countervailing duty margins that have been established in the course of the investigations. *Id.* §§ 1673d(c)(1)(B), 1673e(a)(1), 1671d(c)(1)(B), 1671e(a)(1).

Once Commerce issues an antidumping or countervailing duty order, the United States Customs and Border Protection ("Customs") applies and enforces the duty orders through the assessment and collection of antidumping and countervailing duties on imports of the investigated merchandise. 19 C.F.R. §§ 159.41, 159.47, 351.211. When Customs determines a duty order covers entered merchandise, it suspends liquidation and notifies the importer of "determined or estimated" duties. *Id.* § 159.58(a), (b). "Liquidation" is defined as "the final computation or ascertainment of duties on entries for consumption or drawback entries." *Id.* § 159.1.

After the publication of the duty orders, if a question arises as to whether merchandise is encompassed by an order, an interested party may request a scope inquiry by Commerce to determine if a particular type of merchandise is within the class or kind of merchandise described

in an existing duty order. *See* 19 C.F.R. § 351.225. Commerce has the express authority to conduct a scope inquiry and to clarify the scope of an unclear order pursuant to 19 C.F.R. § 351.225(a), and "should in the first instance decide whether an antidumping order covers particular products," because "the order's meaning and scope are issues particularly within the expertise of that agency." *Xerox Corp. v. United States*, 289 F.3d 792, 795 (Fed. Cir. 2002). Commerce's scope rulings may be challenged before the Court of International Trade ("CIT"). 19 U.S.C. § 1516a(a)(2)(B)(vi).

## II.

On October 19, 2011, Defendant-Appellant Solar-World America Inc. ("SolarWorld") filed antidumping and countervailing duty petitions on imports of solar cells from the People's Republic of China ("PRC"). On December 7, 2012, following antidumping and countervailing duty investigations by Commerce and the Trade Commission, Commerce published antidumping and countervailing duty orders on certain crystalline silicon photovoltaic cells imported from the PRC. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Countervailing Duty Order*, 77 Fed. Reg. 73,017, 73,017 (Dec. 7, 2012); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 77 Fed. Reg. 73,018, 73,018 (Dec. 7, 2012) (collectively, "CSPV Orders"). Commerce established antidumping duty margins at a PRC-wide rate of 249.96%, and a countervailing duty at the "all others" rate of 15.24% ad valorem. Commerce instructed Customs to require cash deposits or the posting of a bond equal to the margins and subsidy rates in effect at the time of entry on products covered by the CSPV Orders. The scope language of the CSPV Orders is identical, and provides, in relevant part:

> The merchandise covered by this order is crystalline silicon photovoltaic cells, and modules, laminates, and panels, consisting of crystalline silicon photovoltaic cells, whether or not partially or fully assembled into other products, including, but not limited to, modules, laminates, panels and building integrated materials.
>
> This order covers crystalline silicon photovoltaic cells of thickness equal to or greater than 20 micrometers, having a p/n junction formed by any means, whether or not the cell has undergone other processing, including, but not limited to, cleaning, etching, coating, and/or addition of materials (including, but not limited to, metallization and conductor patterns) to collect and forward the electricity that is generated by the cell.
>
> . . . .
>
> Excluded from the scope of this order are *thin film photovoltaic products* produced from amorphous silicon (a-Si), cadmium telluride (CdTe), or copper indium gallium selenide (CIGS).

CSPV Orders, 77 Fed. Reg. at 73,017, 73,018–19. The CSPV Orders do not specifically define "thin film photovoltaic products."

Plaintiff Sunpreme Inc. ("Sunpreme") is a U.S. company that imports solar modules produced by Jiawei Solarchina (Shenzhen) Co., Ltd. that are composed, in part, of solar cells designed, developed, and tested at Sunpreme's California facility. Sunpreme's modules are made of "several layers of amorphous silicon less than one micron in thickness, deposited on both sides of a substrate consisting of a crystalline silicon wafer." Appellee's Br. 8. Sunpreme's modules are bifacial, with amorphous silicon being deposited on both the top and bottom sides of a substrate, and are certified by TUV, a third-party product

certification body, to be in compliance with the requirements of IEC 61646, i.e. a thin film terrestrial photovoltaic module. J.A. 1015; 1683–84. Prior to April 2015, Sunpreme's solar modules were imported into the United States as entry type "01," the designation for ordinary consumption entries not subject to any antidumping or countervailing duties.

The United States maintains that Customs began to investigate whether Sunpreme's imports may be subject to the CSPV orders in early 2015. *See Sunpreme Inc. v. United States*, 145 F. Supp. 3d. 1271, 1279 (Ct. Int'l Trade 2016). In April 2015, Customs requested that Sunpreme file its entries under type "03," the designation for entries subject to antidumping or countervailing duties. Customs suspended liquidation on the imports and required antidumping and countervailing duty cash deposits in conformance with the duty margins provided in the CSPV Orders. *Id*. at 1281 n.6.

In response, Sunpreme disputed Customs' decision and provided information supporting its position that its solar module products were outside the scope of the CSPV Orders. *Id*. at 1280–81. Sunpreme provided Customs with lab results from an independent third party identifying amorphous silicon thin film layers in Sunpreme's solar modules, and invited Customs to its California facility to observe its production process. *Sunpreme*, 145 F. Supp. 3d at 1280–81. Customs also performed its own laboratory testing on Sunpreme's products. *Id*.

Around April 20, 2015, Sunpreme began making antidumping and countervailing cash deposits on its solar modules imports. On November 16, 2015, Sunpreme filed a request with Commerce for a scope ruling, challenging Customs' decision that its imports were covered by the CSPV Orders. On December 30, 2015, Commerce initiated a formal scope inquiry.

On December 8, 2015, twenty-two days before Commerce initiated the formal scope inquiry, Sunpreme filed a complaint with the CIT, challenging Customs' collection of cash deposits and suspension of liquidation and seeking a preliminary injunction to prevent Customs from collecting additional cash deposits. J.A. 102. In its complaint, Sunpreme contended that Customs "wrongly require[d] [Sunpreme] to enter as subject to antidumping and countervailing duties and pay cash deposits on, and suspend liquidation of, certain entries of solar modules." J.A. 102. Sunpreme alleged that Customs acted ultra vires and exceeded its ministerial task of collecting antidumping and countervailing duties by interpreting the CSPV Orders to cover Sunpreme's solar modules, despite that thin film products were expressly excluded from the coverage of the CSPV Orders.

The United States concedes in its opening brief that Customs does not contest the presence of a thin film of amorphous silicon in Sunpreme's products, but argues that the cells in Sunpreme's products contained other characteristics described in the CSPV Orders, namely being a crystalline silicon composition greater than 20 micrometers in thickness containing a p/n junction. United States' Opening Br. 9, 18–19. Thus, in the government's view, "the presence of the thin film did not necessarily preclude the application of the orders because the scope of the orders provides that crystalline photovoltaic cells are included whether or not the cell 'has undergone other processing . . . and/or the addition of materials . . . to collect and forward the electricity that is generated by the cell.'" *Id.* at 9–10 (first citing CSPV Orders, 77 Fed. Reg. at 73,017–18; then citing *Sunpreme Inc. v. United States*, 190 F. Supp. 3d 1185, 1195–97 (Ct. Int'l Trade 2016)).

The United States, together with intervenor Solar-World, moved to dismiss for lack of subject matter jurisdiction on the grounds that Sunpreme had failed to

exhaust its administrative remedies by not obtaining a scope ruling from Commerce prior to filing its complaint in the CIT. On December 14, 2015, the court granted Sunpreme's application for a temporary restraining order, preventing the continued collection of estimated duty deposits. On January 8, 2016, the court issued a preliminary injunction restraining Customs from collecting duties on future entries, finding that Sunpreme had shown irreparable harm from the financial hardship associated with paying the duties. *Sunpreme*, 145 F. Supp. 3d at 1294–98. The court also denied the motion to dismiss, concluding that subject matter jurisdiction existed under 28 U.S.C. § 1581(i). *Id.* at 1290–91. On October 11, 2016, the court entered judgment for Sunpreme and ordered Customs to return cash deposits collected prior to the initiation of the scope inquiry, holding that Customs acted outside its authority in its unilateral interpretation of the scope language of the CSPV Orders to include Sunpreme's solar modules, and thus lacked authority to suspend liquidation and order cash deposits. *Sunpreme*, 190 F. Supp. 3d at 1194, 1202–05. The United States and SolarWorld appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

In July of 2016, before entry of the CIT's final judgment in this case, Commerce issued its final scope determination concluding that Sunpreme's products fall within the scope of the CSPV Orders. J.A. 1433. Sunpreme appeals that determination separately. *See Sunpreme Inc. v. United States*, 256 F. Supp. 3d 1265 (Ct. Int'l Trade 2017), *appeal docketed*, No. 18-1116 (Fed. Cir. Oct. 30, 2017).

## DISCUSSION

The primary issue on appeal is whether the CIT had jurisdiction over Sunpreme's complaint. We review jurisdictional rulings without deference. *Trs. in Bankr. of*

*N. Am. Rubber Thread Co., Inc. v. United States*, 593 F.3d 1346, 1351 (Fed. Cir. 2010).

The CIT's jurisdiction is governed by 28 U.S.C. § 1581. Relevant to this case are subsections (a), (c), and (i). Section 1581(a) grants the CIT jurisdiction over Customs' denial of protests, and "provides no jurisdiction for protests outside the[] exclusive categories" listed in 19 U.S.C. § 1514(a). *Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 976 (Fed. Cir. 1994). Section 1581(c) grants the CIT jurisdiction to review Commerce's scope ruling determinations. Section 1581(i) embodies a "residual" grant of jurisdiction, and may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate. *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002). "[W]hen relief is prospectively and realistically available under another subsection of 1581, invocation of subsection (i) is incorrect." *Chemsol, LLC v. United States*, 755 F.3d 1345, 1354 (Fed. Cir. 2014). Where another remedy is or could have been available, the party asserting § 1581(i) jurisdiction has the burden to show that the remedy would be manifestly inadequate. *Id.* at 1349.

The CIT concluded that it lacked jurisdiction over Sunpreme's claims under § 1581(a) or (c), but that it possessed the residual grant of jurisdiction under § 1581(i). *Sunpreme*, 145 F. Supp. 3d at 1290–92. The CIT's determination that it lacked jurisdiction under § 1581(a) or (c) rested primarily on its reading of Sunpreme's complaint as challenging Customs' allegedly ultra vires decision that Sunpreme's modules were subject to the CSPV Orders. *Id.* at 1284 ("The court finds [Sunpreme] is challenging [Customs'] unilateral interpretation of ambiguous scope language in excess of its authority."). The CIT reasoned that "[w]here factual determinations alone do not permit [Customs] to determine whether a

good is within the scope or outside the scope of the Orders, goods must be considered outside of the scope until Commerce clarifies or interprets the Orders and clarifies what products should be included." *Id.* at 1288. The CIT concluded that it lacked jurisdiction under § 1581(a) because such an ultra vires act by Customs does not qualify as a protestable decision under § 1514(a). *Id.* at 1289–90. The CIT likewise found that review was unavailable under § 1581(c), which only provides jurisdiction for scope ruling determinations by Commerce. *Id.* at 1286. Having concluded that jurisdiction was unavailable under § 1581(a) or (c), the CIT determined that the residual provision § 1581(i) provided jurisdiction over Sunpreme's complaint that Customs "failed 'to properly perform its ministerial function to apply the instructions Commerce issued to [Customs] relating to the Orders . . .' which 'contain a specific, unqualified exclusion for thin film products.'" *Id.* at 1290 (second alteration in original). We disagree.

We begin with § 1581(a). In *Xerox*, we held that where the scope of a duty order is "unambiguous and undisputed, and the goods clearly do not fall within the scope of the order," Customs' misapplication of the duty order is a protestable decision reviewable by the CIT under § 1581(a). 289 F.3d at 795. Here, the parties and the CIT recognize that since a dispute exists over the scope and application of the CSPV Orders, Customs' decision is not protestable and thus not subject to review under § 1581(a). *See Sunpreme*, 145 F. Supp. 3d at 1285; SolarWorld's Opening Br. 18.

The parties also recognize that § 1581(c) does not apply in this case. Section 1581(c) provides jurisdiction over challenges to Commerce's scope ruling determinations. Here, at the time Sunpreme filed its complaint in December of 2015, Commerce had not yet issued a reviewable scope ruling determination. Since Sunpreme was not

challenging a scope ruling from Commerce, § 1581(c) does not apply.

The CIT determined that it possessed subject matter jurisdiction under § 1581(i), the residual provision. We disagree and hold that the CIT lacked jurisdiction under § 1581(i) because there existed a remedy under another subsection that was not manifestly inadequate. Section 1581(i) "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006) (quoting *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992)). Not only was jurisdiction available under another subsection of § 1581, namely subsection (c), Sunpreme was required to exhaust the administrative remedies available to it in the form of a scope ruling inquiry and scope ruling determination. The problem Sunpreme cannot overcome is that it failed to wait until it had a formal scope ruling in hand prior to filing suit.

The doctrine of exhaustion of administrative remedies provides that judicial relief is not available for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998). When a question arises as to whether certain goods are within the scope of an antidumping duty order, importers should first seek a scope ruling from Commerce. *Id.* at 598–99. This is because Commerce "should in the first instance decide whether an antidumping order covers particular products," because "the order's meaning and scope are issues particularly within the expertise of that agency." *Id.* at 600; *see also JCM, Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000) ("To allow a party to elect to proceed under section 1581(i), without having first availed himself of the remedy provided by section 1581(c), would

undermine the integrity of the clear path Congress intended a claimant to follow.").

When an importer disputes Customs' application of an antidumping or countervailing duty order, the proper remedy is for the importer to seek a scope inquiry from Commerce, the result of which may subsequently be challenged before the CIT. *See* 19 U.S.C. § 1514(b) (stating that Customs' decisions on trade remedy orders are final and conclusive unless the importer files a complaint under 19 U.S.C. § 1516a, the statutory provision providing for challenges to Commerce scope determinations). By filing a complaint with the CIT before obtaining a scope ruling, Sunpreme has circumvented the established administrative procedure for determining the scope of an antidumping or countervailing duty order. Permitting such circumventions would discourage importers from seeking scope rulings and undermine the remedial scheme established by Congress. *See Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1558 (Fed. Cir. 1988) (holding that where Congress has prescribed a particular track for a claimant to follow, in administrative or judicial proceedings, and particularly when the claim is against the United States, the remedy will be exclusive).

Sunpreme's characterization of its appeal as challenging Customs' allegedly ultra vires action is unavailing. "[A] party may not expand a court's jurisdiction by creative pleading." *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006). Instead, "we look to the true nature of the action in the district court in determining jurisdiction of the appeal." *Id.* (quoting *Williams v. Sec'y of Navy*, 787 F.2d 552, 557 (Fed. Cir. 1986)). Here, Sunpreme's complaint indicates that it is seeking the refund of cash deposits, ceasing the suspension of liquidation for its entries, and preventing the collection of cash deposits and suspension of liquidation in the future. But this relief is the very relief associated with a scope ruling determination, which demonstrates that Sunpreme

is in fact seeking a decision that its products are not subject to the scope of the orders. The appropriate remedy for this type of claim is to request a scope ruling from Commerce. *Sandvik*, 164 F.3d at 598–99. Once an adverse scope ruling is obtained, a complaint may be filed with the CIT pursuant to that court's jurisdiction under § 1581(c).

We next consider whether that remedy was manifestly inadequate. Sunpreme argues that any remedy outside of § 1581(i) would cause significant financial hardship and therefore would be manifestly inadequate. Sunpreme's Br. 42. This argument is without merit. This court's cases make clear that mere allegations of financial harm do not render a remedy established by Congress manifestly inadequate. *Int'l Custom Prods.*, 467 F.3d at 1327. For example, we have noted that to be manifestly inadequate, the protest must be an "exercise in futility, or 'incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'" *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1294 (Fed. Cir. 2008) (emphasis omitted) (citing *Int'l Custom Prods.*, 467 F.3d at 1328). Nor can delay serve as the basis for manifest inadequacy; "delays inherent in the statutory process do not render it manifestly inadequate." *Int'l Custom Prods.*, 467 F.3d at 1327.

Sunpreme has not demonstrated that obtaining a scope ruling would have been an exercise in futility, useless or incapable of producing the result it seeks. Here, requiring Sunpreme to exhaust the administrative remedies would hardly deprive Sunpreme of the opportunity for full relief. Had Commerce concluded that Sunpreme's modules were out of scope, Customs would have lifted the suspension of liquidation on Sunpreme's entries and refunded any cash deposits. *See* 19 C.F.R. § 351.225(l)(3). The statute does not prohibit, and the

pertinent regulations clearly contemplate, that Customs can suspend liquidation pre-scope inquiry.[1] In this case, the suspension of liquidation mitigates the long-term effect of any alleged financial hardship to Sunpreme by ensuring the return of cash deposits pending the merits of its scope dispute.

## CONCLUSION

Jurisdiction under § 1581(i) may not be invoked when jurisdiction under any other subsection is or could have been available. Sunpreme was required to exhaust its administrative remedies by seeking a scope ruling from Commerce, which it could have subsequently challenged under § 1581(c) had the ruling been unfavorable. The remedy under § 1581(c) cannot, in this case, be said to be manifestly inadequate such that it provides the CIT with jurisdiction to hear the present action under § 1581(i). Accordingly, the judgment of the CIT is reversed.

## REVERSED

## COSTS

No costs.

---

[1] Section 351.225(l)(1) provides that when a scope inquiry is initiated "and the product in question *is already subject to suspension of liquidation*, that suspension of liquidation will be continued" pending the results of the scope inquiry. 19 C.F.R. § 351.225(l)(1) (emphasis added). Should Commerce conclude that the product in question is not included within the scope of the order, suspension of liquidation on the product is ended and Commerce will order Customs to refund any cash deposits or release any related bonds. "If the Secretary initiates a scope inquiry, any prior suspension of liquidation is continued until the administrative proceeding is concluded." *Sandvik Steel*, 164 F.3d at 599 (citing 19 C.F.R. § 351.225(l)).