# United States Court of Appeals for the Federal Circuit

---

**ERWIN HYMER GROUP NORTH AMERICA, INC., FKA ROADTREK MOTORHOMES, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-1282

---

Appeal from the United States Court of International Trade in No. 1:16-cv-00133-CRK, Judge Claire R. Kelly.

---

Decided: July 22, 2019

---

JOHN MICHAEL PETERSON, Neville Peterson LLP, New York, NY, argued for plaintiff-appellant. Also represented by RICHARD F. O'NEILL.

MARCELLA POWELL, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by AMY RUBIN; JEANNE DAVIDSON, JOSEPH H. HUNT, WASHINGTON, DC; MICHAEL W. HEYDRICH, Office of the Assistant Chief Coun-

sel, United States Bureau of Customs and Border Protection, United States Department of Homeland Security, New York, NY.

_____

Before DYK, REYNA, and CHEN, *Circuit Judges*.

REYNA, *Circuit Judge*.

Erwin Hymer Group North America, Inc., appeals the final judgment of the United States Court of International Trade granting the Government's motion for judgment on the agency record. The Court of International Trade's assertion of residual jurisdiction under 28 U.S.C. § 1581(i) was improper because a civil action for contesting the denial of protests could have been available under 28 U.S.C. § 1581(a), and the remedy provided under § 1581(a) is not manifestly inadequate. Because the Court of International Trade lacked jurisdiction, we reverse and remand with instructions to dismiss.

## BACKGROUND

In 2014, Erwin Hymer Group North America, Inc., ("Hymer") imported 149 vehicles into the United States from Canada. In 2015, the United States Customs and Border Protection ("Customs") liquidated the entries, classifying them under subheading 8703.24.00 of the Harmonized Tariff Schedule of the United States (2014) ("HTSUS"). Subheading 8703.24.00 applies a tariff of 2.5% *ad valorem* to "motor vehicles principally designed for transporting persons" and with a "spark-ignition internal combustion reciprocating piston engine . . . [o]f a cylinder capacity exceeding 3,000 cc." Customs assessed duties accordingly.

In October 2015, Hymer timely filed a protest under 19 U.S.C. § 1514, contesting Customs' classification of the vehicles. The protest materials included, among other

things, a cover letter, a standard form ("Protest Form"),[1] and a memorandum in support of the protest. Hymer argued in its protest that the entries were entitled to duty-free treatment under HTSUS subheading 9802.00.50 and Article 307 of the North American Free Trade Agreement, a provision known as "American Goods Returned." This provision generally relates to preferential tariff treatment for qualifying goods that reenter the United States customs territory after repairs or alterations in Canada or Mexico. *See* 19 C.F.R. § 181.64(a).

In the cover letter attached to its protest, Hymer requested that Customs "suspend action on th[e] protest" until the Court of International Trade ("CIT") issued a decision in a different case, *Roadtrek Motorhomes, Inc. v. United States*, No. 11-00249. *See* J.A. 5, 51. The CIT had stayed the *Roadtrek* case pending final disposition of a test case on the issues raised: *Pleasure-Way Indus., Inc. v. United States*, 38 I.T.R.D. 1889 (BNA), 2016 WL 6081818 (Ct. Int'l Trade 2016) ("*Pleasure-Way I*"), *aff'd*, 878 F.3d 1348 (Fed. Cir. 2018) ("*Pleasure-Way II*").[2]

In *Pleasure-Way I*, the CIT's jurisdiction was based on 28 U.S.C. § 1581(a). The CIT addressed whether certain van-based motorhomes—similar to the vehicles at issue in this case—qualified for preferential tariff treatment under HTSUS subheading 9802.00.50. *Pleasure-Way I*, 2016 WL

---

[1]    Hymer refers to the Protest Form as the "CF 19 Protest Form," and the Government refers to it as the "CBP Form 19." Appellant Br. 4; Appellee Br. 3.

[2]    Hymer, formerly known as Roadtrek Motorhomes, Inc., was the plaintiff in the *Roadtrek* case. In addition, Hymer's counsel in this case also represented Roadtrek and Pleasure-Way in those cases. All three cases involve essentially the same issue: whether the vehicles in question qualify for duty-free treatment under HTSUS subheading 9802.00.50. In both *Roadtrek* and *Pleasure-Way*, CIT jurisdiction was asserted under 28 U.S.C. § 1581(a).

6081818, at *3.  The CIT decided that HTSUS subheading 9802.00.50 did not apply, and on January 5, 2018, this court affirmed that decision.  *Pleasure-Way II*, 878 F.3d at 1349–50.  Subsequently, entries of the vehicles were liquidated at a rate of 2.5% *ad valorem*, the same rate that Customs argues should apply in this case.

While *Pleasure-Way* was pending, a Customs Import Specialist reviewed Hymer's protest, and on December 31, 2015, checked a box labeled "Approved" in Field 17 of the Protest Form.  Customs sent a copy of the Protest Form with the checked box to Hymer but did not include a refund check or offer any explanations.

On January 5, 2016, a Customs Entry Specialist forwarded Hymer's protest for review by a supervisor.  On January 11, 2016, while the matter was pending before the Entry Specialist, Hymer received a copy of the Protest Form with the "Approved" box checked.  On the same day, a Supervisor Import Specialist emailed an Entry Director asking her to locate Hymer's protest and explaining that reliquidation should not occur because the protest was suspended.  The Entry Director in turn advised other Customs employees not to reliquidate the entries.  The following day, on January 12, 2016, the Entry Director informed the Supervisor Import Specialist that the protest had been returned to the Import Specialist who initially reviewed the protest because the protest had not been signed by the Supervisor Import Specialist.  On January 21, 2016, the Import Specialist updated Customs' electronic system to reflect that, per Hymer's request, the protest was suspended pending resolution of the *Roadtrek* case.

On March 17, 2016, Hymer's counsel emailed the Import Specialist indicating that, on January 11, 2016, counsel had received a copy of the Protest Form with the "Approved" box checked, and asked whether the protest was suspended.  On March 27, 2016, the Import Specialist

replied and confirmed that the protest was suspended pending resolution of *Roadtrek*.

On July 18, 2016, approximately 7 months from the date it learned of the checked-box, no-refund-check circumstance, Hymer sued the Government in the CIT, seeking an order of mandamus directing Customs to reliquidate the entries of the vehicles under HTSUS subheading 9802.00.50. Hymer asserted CIT jurisdiction under 28 U.S.C. § 1581(i)(1) and (i)(4),[3] and on grounds that Customs' failure to provide a refund check constituted unlawfully withheld action under the Administrative Procedure Act, 5 U.S.C. § 706(1). The Government answered the complaint, and both parties filed competing motions for judgment in their favor.

Hymer argued that the "Approved" box on the Protest Form constituted an "allowance" under 19 U.S.C. § 1515(a),[4] requiring Customs to refund Hymer's excess

---

[3] In relevant part, 28 U.S.C. § 1581(i) provides:

In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

. . .

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

[4] In relevant part, 19 U.S.C. § 1515(a) provides:

duty deposit.  Hymer asserted that the marking of the "Approved" box definitively showed its protest was allowed. According to Hymer, this allowance in turn triggered non-discretionary reliquidation of its entries at the zero-duty rate advocated in Hymer's protest.  Hymer claimed it was due a refund check in the amount of the excess duties it deposited (2.5% *ad valorem*), which it claimed Customs was improperly withholding.

The Government argued that the CIT lacked jurisdiction under § 1581(i).  The Government noted that Hymer should have brought the action under § 1581(a), which gives the CIT jurisdiction over any civil action contesting the denial of a protest.  In addition, the Government contended that, because Hymer's protest remained pending, Hymer retained the option to file a request for an accelerated disposition of its suspended protest under 19 U.S.C. § 1515(b), and if denied, had a right to appeal the denial at the CIT under § 1581(a).  The Government asserted that Customs' administrative actions in processing the protest, which included the checking of the "Approved" box, did not constitute an allowance under the statute and did not trigger a non-discretionary duty to reliquidate the entries and issue a refund.

Unless a request for an accelerated disposition of a protest is filed in accordance with subsection (b) of this section the appropriate customs officer, within two years from the date a protest was filed in accordance with section 1514 of this title, shall review the protest and shall allow or deny such protest in whole or in part.  Thereafter, any duties, charge, or exaction found to have been assessed or collected in excess shall be remitted or refunded and any drawback found due shall be paid.

On November 3, 2017, the CIT denied Hymer's motion for judgment on the pleadings and granted the Government's motion for judgment on the agency record. *Erwin Hymer Grp. N. Am., Inc. v. United States*, 273 F. Supp. 3d 1336, 1338 (Ct. Int'l Trade 2017) ("*CIT Opinion*").

First, the CIT rejected the Government's argument that it lacked jurisdiction. The CIT agreed with Hymer that Hymer was not challenging the denial of a protest, but rather Customs' authority to rescind, or renege on, a final decision to "allow" a protest. *Id.* at 1343–44, 1344 n.19. The CIT reasoned that Hymer's challenge concerns the administration and enforcement of protests under § 1581(i)(4), not the denial of a protest under § 1581(a). *Id.* The CIT further determined that jurisdiction under § 1581(a) was not available because that section applies to appeals from denied protests, whereas Hymer was challenging Customs' failure to act on an allegedly allowed protest. *Id.* at 1344 n.19.

Second, the CIT concluded that Customs was not obligated to refund the alleged excess duties paid. *Id.* at 1345–46. The CIT found that neither the statute nor the regulations defined what constitutes an allowance under § 1515(a). *Id.* Rejecting Hymer's argument to the contrary, the CIT held that "[t]he statutory and regulatory scheme[s] establish[] reliquidation as the act which allows a protest." *Id.* at 1345. The CIT determined that although the Import Specialist's checking of the "Approved" box may have indicated an initial determination, such checking did not trigger a mandatory allowance by Customs. *Id.* at 1346. Thus, there was no reliquidation of Hymer's entries, and consequently, no allowed protest.

Hymer appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

DISCUSSION

We address the issue of the CIT's jurisdiction. The CIT asserted jurisdiction over this case under 28 U.S.C. § 1581(i)(4). *CIT Opinion*, 273 F. Supp. 3d at 1344.[5] Whether the CIT has jurisdiction is a question of law, which we review *de novo*. *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1326 (Fed. Cir. 2006) ("*ICP*").

We often describe § 1581(i) as a "broad residual" grant of jurisdiction. *ICP*, 467 F.3d at 1327. But our precedent is "unambiguous [and] clear that [§ 1581(i)'s] scope is strictly limited." *Id.* (quoting *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992)). This is so because an "overly broad interpretation" of § 1581(i) would otherwise "threaten to swallow the specific grants of jurisdiction contained within the other subsections." *Norman G. Jensen, Inc. v. United States*, 687 F.3d 1325, 1329 (Fed. Cir. 2012); *accord Norcal*, 963 F.2d at 359 (recognizing strict limits upon the scope of § 1581(i) are necessary to "preserve[] the congressionally mandated procedures and safeguards provided in the other subsections" (internal citation omitted)). Accordingly, this court has "repeatedly held that subsection (i)(4) 'may not be invoked when jurisdiction under another subsection of § 1581 is or *could have been available*, unless the remedy provided under that other subsection would be manifestly inadequate." *Ford Motor Co. v. United States*, 688 F.3d 1319, 1323 (Fed. Cir.

---

[5] The Government challenged jurisdiction at the CIT but did not address or brief the issue on appeal. The issue arose during oral argument, and after argument, we ordered the parties to submit supplemental briefing on whether jurisdiction is proper under 28 U.S.C. § 1581(i). The parties filed supplemental letter briefs addressing jurisdiction. In its supplemental letter, the Government reasserted its arguments before the CIT that the CIT lacks jurisdiction under § 1581(i).

2012) (quoting *Miller & Co. v. United States,* 824 F.2d 961, 963 (Fed. Cir. 1987) (emphasis added)).

An inquiry into § 1581(i) jurisdiction thus primarily involves two questions. First, we consider whether jurisdiction under a subsection other than §1581(i) was available. *Id.* Second, if jurisdiction was available under a different subsection of § 1581, we examine whether the remedy provided under that subsection is "manifestly inadequate." *Id.* If the remedy is not manifestly inadequate, then jurisdiction under § 1581(i) is not proper. The party asserting § 1581(i) jurisdiction bears the burden of showing that another subsection is either unavailable or manifestly inadequate. *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018) (citing *Chemsol, LLC v. United States*, 755 F.3d 1345, 1349 (Fed. Cir. 2014)).

The CIT concluded that jurisdiction under § 1581(a) was not available to Hymer. We disagree. At bottom, Hymer's appeal is directed to Customs' action in suspending the protest. Generally, when an importer enters merchandise into the United States, the importer must deposit estimated duties with Customs. 19 C.F.R. §§ 141.101–03. Customs later liquidates the entries, meaning it conducts a "final computation or ascertainment of duties on entries for consumption or drawback entries." *Id.* § 159.1. As part of the liquidation process, Customs classifies the entries according to the HTSUS. *Id.* § 152.11. If the importer disagrees with Customs' classification, the importer may, within 180 days of the date of liquidation, file a protest with Customs. *Id.* §§ 174.11–12. The protest must set forth in writing, among other things, the nature of each objection and the reasons for those objections. 19 U.S.C. § 1514(c). Through the protest process, importers may challenge Customs' classification and the liquidation or reliquidation of an entry. *Id.* § 1514(a)–(c); *see also Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002).

Once a protest is filed, Customs must typically either allow or deny it within two years. 19 U.S.C. § 1515(a). An importer, however, may request an accelerated disposition of its protest at "any time concurrent with or following the filing of such protest." *Id.* § 1515(b). If the protest is not allowed within thirty days after the mailing of the accelerated disposition request, the protest is deemed denied. *Id.* When an importer's protest is denied under 19 U.S.C. § 1515, in whole or in part, the importer may "contest [Customs'] denial of [that] protest" by filing a civil action before the CIT under 28 U.S.C. § 1581(a). *See* 19 U.S.C. § 1515(a). If at the end of the process the protest is "allowed," the importer receives a check in the amount of excess duties paid.

The Government argues that § 1581(i) jurisdiction is not available because two administrative options remain available to Hymer under the protest regulatory framework, both of which lead to judicial review under § 1581(a). First, Hymer may wait until Customs takes final action on the protest. If the protest is allowed, then Hymer will receive its refund check. If the protest is denied, Hymer may seek judicial review under § 1581(a). Second, Hymer may prompt Customs to act by pursuing an accelerated disposition. If Customs does not act within thirty days, the protest will be deemed denied, thereby permitting judicial review under § 1581(a).

Hymer claims it is barred from pursuing either option because Customs definitively concluded the protest proceeding and allowed the protest when the Import Specialist checked the "Approved" box on the Protest Form. Hymer contends that § 1581(a) provides jurisdiction to review *denials* of protests, but not an *allowance* of a protest.

We find Hymer's argument inventive, but invalid. Important to this case is that Hymer caused Customs to suspend the protest proceeding. Specifically, upon filing, the protest was suspended awaiting the outcome of *Roadtrek,* which in turn awaited resolution of the *Pleasure-Way* test

case. *Pleasure-Way* has been resolved, but Customs has not finally applied the outcome of that case to Hymer's protest.

Even assuming that Customs acted to allow the protest, Customs was within its authority to reconsider that action and restore the protest to the suspended status that Hymer requested. *See Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.*, 839 F.3d 1382, 1385 (Fed. Cir. 2016) ("[A]dministrative agencies possess inherent authority to reconsider their decisions, subject to certain limitations, regardless of whether they possess explicit statutory authority to do so." (quoting *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352 (Fed. Cir. 2008)); *GTNX, Inc. v. INTTRA, Inc.*, 789 F.3d 1309, 1313 (Fed. Cir. 2015); *Home Prods. Int'l, Inc. v. United States*, 633 F.3d 1369, 1377 (Fed. Cir. 2011).

When asked during oral argument, the Government revealed that Hymer's protest was still suspended awaiting only the decision of this court. Oral Arg. 16:12–16:19, 25:15–25:40. This means that Hymer could potentially receive a favorable ruling and a refund check, an outcome that would, of course, negate the need for Hymer to appeal. If the protest is denied, then Hymer would have an immediate avenue to appeal under § 1581(a) the very issue it raises before this court.[6] *See Norman*, 687 F.3d at 1331 (holding that jurisdiction under § 1581(i) was improper because the party could have requested an accelerated disposition under § 1515(b) and then asserted jurisdiction under § 1581(a) if the protest was denied); *cf. Hitachi Home Elecs. (Am.), Inc. v. United States*, 661 F.3d 1343, 1349–51 (Fed.

---

[6] During oral argument, the Government asserted that, if Customs denies Hymer's suspended protest, Hymer could sue under § 1581(a) and argue that the denial was improper in light of the Import Specialist's checking of the "Approved" box. Oral Arg. 26:49–28:38.

Cir. 2011) (concluding that jurisdiction under § 1581(i) was improper where accelerated disposition under § 1515(b) was available to the importer). In sum, Congress established § 1581(a) as the jurisdictional route for the CIT to address challenges to protest denials, and this route remains open to Hymer.[7] We conclude that Hymer has failed to meet its burden to demonstrate that relief under § 1581(a) is manifestly inadequate in light of the true nature of this action.

Importers such as Hymer should not be permitted to rest on artful or creative pleadings to expand the jurisdictional scope of § 1581(i), which Congress limited as a statutory basis for the CIT's jurisdiction over protests. *See Sunpreme*, 892 F.3d at 1193 (quoting *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006)); *Am. Air Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1550–51 (Fed. Cir. 1983). To permit such expansion of jurisdiction would threaten to swallow § 1581(a) and would be contrary to this court's precedent.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the CIT and remand with instructions to dismiss the complaint for lack of jurisdiction.

**REVERSED AND REMANDED**

---

[7] The court notes, but does not address, two underlying concerns: ripeness and failure to exhaust administrative remedies, both of which are entrenched in the suspension of the protest proceeding, which itself was caused by Hymer's hand. Although important and perhaps even dispositive in this action, the court elects not to address those issues given its conclusion that the CIT lacked jurisdiction.

COSTS

No costs.