# United States Court of Appeals for the Federal Circuit

---

**CARBON ACTIVATED CORPORATION,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2015-1112

---

Appeal from the United States Court of International Trade in No. 1:13-cv-00366-GWC, Judge Gregory W. Carman.

---

Decided: June 26, 2015

---

NANCY NOONAN, Arent Fox, LLP, Washington, DC, for plaintiff-appellant.

ANTONIA RAMOS SOARES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BENJAMIN C. MIZER, JEANNE E. DAVIDSON, CLAUDIA BURKE; EDWARD N. MAURER, United States Bureau of Customs and Border Protection, United States Department of Homeland Security, New York, NY.

Before DYK, SCHALL, and TARANTO, *Circuit Judges.*

DYK, *Circuit Judge.*

Carbon Activated Corp. ("Carbon") appeals a decision of the United States Court of International Trade ("Trade Court") dismissing for lack of subject matter jurisdiction Carbon's challenge to the U.S. Customs and Border Protection's ("Customs") liquidation of three entries of activated carbon. Because Carbon could have availed itself of the jurisdictional provision in 28 U.S.C. § 1581(a) by filing a timely protest under 19 U.S.C. § 1514, there is no jurisdiction under § 1581(i). We affirm.

## BACKGROUND

Carbon imported from the People's Republic of China ("China") three entries of activated carbon between June 5, 2007, and July 10, 2007. The entries were subject to an antidumping duty order from the Department of Commerce ("Commerce") covering activated carbon from China.[1] Pursuant to that order, Carbon deposited estimated antidumping duties for the entries at a rate of 67.14%.

An administrative review of the antidumping duty order for the period from October 11, 2006, to March 31, 2008, was commenced on June 4, 2008.[2] In that connec-

---

[1]    *See* Certain Activated Carbon From China, 72 Fed. Reg. 19,723 (USITC Apr. 19, 2007); Notice of Antidumping Duty Order: Certain Activated Carbon From the People's Republic of China, 72 Fed. Reg. 20,988 (Dep't of Commerce Apr. 27, 2007).

[2]    *See* Initiation of Antidumping and Countervailing Duty Administrative Reviews and Requests for Revoca-

tion, Commerce instructed Customs to suspend liquidation of the entries imported during the period under review. Despite the suspension instruction, Customs liquidated Carbon's three entries between April and May 2008 at the cash deposit rate of 67.14%. The parties appear to agree that in light of Commerce's instructions Customs should not have liquidated the entries. Carbon allegedly was not aware of the liquidation and did not at that time protest the liquidations pursuant to 19 U.S.C. § 1514.

On November 10, 2009, Commerce published the final results of the administrative review. *See* First Administrative Review of Certain Activated Carbon from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, 74 Fed. Reg. 57,995 (Dep't of Commerce Nov. 10, 2009). Several parties, including the exporter of Carbon's entries, Hebei Foreign Trade and Advertising Corp. ("Hebei"), challenged the results at the Trade Court and obtained a preliminary injunction suspending liquidation on unliquidated entries. As the parties agree, because the injunction was obtained after Carbon's three entries were already liquidated, the injunction did not cover the erroneously liquidated entries.

Ultimately, Commerce adopted, and the Trade Court sustained, a final liquidation rate of 16.35% for the entries exported by Hebei. *See Hebei Foreign Trade & Advert. Corp. v. United States*, 807 F. Supp. 2d 1317, 1319, 1323 (Ct. Int'l Trade 2011). On January 11, 2012, Commerce accordingly provided liquidation instructions to Customs to liquidate the remaining unliquidated entries at the 16.35% rate. That instruction would have applied to the three entries in question had they not

---

tion in Part, 73 Fed. Reg. 31,813 (Dep't of Commerce June 4, 2008).

already been liquidated at the higher 67.14% rate.

In June 2012, Carbon allegedly first became aware that the three entries had been erroneously liquidated in 2008 at the 67.14% rate. On September 11, 2012, Carbon filed a protest, which has not been acted upon by Customs.[3] On October 24, 2013, Carbon filed a complaint in the Trade Court under 28 U.S.C. § 1581(i), seeking a refund in accordance with the final 16.35% rate, and arguing that any other jurisdictional provision was manifestly inadequate. The Trade Court found that Carbon's protest of the alleged erroneous liquidation three years after the entries were liquidated was well after the 180-day statutory deadline following liquidation. *See* 19 U.S.C. § 1514(c)(3). Because the Trade Court determined that filing a timely protest in 2008 would not have been a manifestly inadequate remedy, it held that § 1581(i) was not available and dismissed the case. *See Carbon Activated Corp. v. United States*, 6 F. Supp. 3d 1378, 1380–81 (Ct. Int'l Trade 2014). Carbon timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

### I

This court reviews de novo the Trade Court's dismissal for lack of subject matter jurisdiction. *See Chemsol, LLC v. United States*, 755 F.3d 1345, 1348 (Fed. Cir. 2014).

### II

The Trade Court's limited jurisdiction is enumerated

---

[3]    According to the government, Customs has suspended action on the protest because it involves the entries at issue in this case.

in 28 U.S.C. § 1581(a)–(j). Subsection (i),[4] the provision Carbon seeks to invoke here, is a "residual" jurisdictional provision available where the other jurisdictional provisions are not available, but "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Ford Motor Co. v. United States*, 688 F.3d 1319, 1323

---

[4]    Subsection (i) provides:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

28 U.S.C. § 1581(i).

(Fed. Cir. 2012) (quoting *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987)).

Upon request, Commerce will conduct periodic administrative reviews of antidumping orders. *See* 19 U.S.C. §§ 1675 *et seq.* During the period of review, Commerce suspends liquidation of entries. Publication of the final result of an administrative review lifts the suspension of liquidation for that period. *See Int'l Trading Co. v. United States*, 281 F.3d 1268, 1271 (Fed. Cir. 2002). Commerce then issues liquidation instructions to Customs with respect to these goods at the dumping rate determined by Commerce. *See* 19 U.S.C. § 1675(a)(3)(B); 19 C.F.R. § 351.212(b). However, interested parties may appeal to the Trade Court a final result of an administrative review, *see* 19 U.S.C. § 1516a,[5] and if judicial review is requested, the Trade Court may enjoin the liquidation of entries to prevent liquidation until judicial review is completed, *see* 19 U.S.C. § 1516a(c)(2). In fact, as we explained in *Zenith Radio Corp. v. United States*, 710

---

[5]   Section § 1516a provides that, with respect to final determinations by Commerce in administrative reviews of antidumping duties:

> [w]ithin thirty days . . . an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing a summons, and within thirty days thereafter a complaint, each with the content and in the form, manner, and style prescribed by the rules of that court, contesting any factual findings or legal conclusions upon which the determination is based.

19 U.S.C. § 1516a(a)(2).

F.2d 806 (Fed. Cir. 1983), a party must secure a preliminary injunction barring liquidation. If no such injunction is entered and the entries are liquidated, the challenge to Commerce's antidumping order becomes moot. *See id.* at 810 (holding that liquidation would cause irreparable harm because it would render court powerless to grant an effective remedy); *see also Agro Dutch Indus. Ltd. v. United States*, 589 F.3d 1187, 1190 (Fed. Cir. 2009) ("Subsequent case law has interpreted *Zenith* to establish a general rule that, at least in the context of judicial review under 19 U.S.C. § 1516a, liquidation moots a party's claims pertaining to the liquidated entries."). Once a final court decision is published, the enjoined entries "shall be liquidated in accordance with the final court decision in the action." 19 U.S.C. § 1516a(e).

If, however, Customs disregards Commerce's suspension instructions and liquidates the entries, an importer may protest the liquidation pursuant to 19 U.S.C. § 1514. Under § 1514, liquidation "shall be final and conclusive upon all persons . . . unless a protest is filed," 19 U.S.C. § 1514(a), and protests have to be filed within 180 days after the date of liquidation, *see* 19 U.S.C. § 1514(c)(3)(A). If Customs denies the protest, *see* 19 U.S.C. § 1515, the importer may seek review in the Trade Court. *See* 28 U.S.C. § 1581(a) (vesting the Trade Court with "exclusive jurisdiction of any civil action commenced to contest the denial of a protest"). The Trade Court can in that case provide the appropriate remedy. In such circumstances, the *Zenith* rule would not apply, that is, a remedy would be available even though the entries have been liquidated. For instance, in *Koyo Corp. v. United States*, 497 F.3d 1231 (Fed. Cir. 2007), we held that where Customs had deemed some entries liquidated at the rate of entry instead of at a final duty rate determined by Commerce, despite Commerce's instructions to liquidate at the final rate, the importer could still protest the deemed liquida-

tion and the final duty rate would apply. *See id.* at 1237, 1241. We affirmed the Trade Court's order that Customs "reliquidate . . . at the rate of duty determined in the administrative and judicial reviews as published in the Federal Register." *Id.* at 1243; *see also Shinyei Corp. of Am. v. United States*, 524 F.3d 1274, 1284 (Fed. Cir. 2008) (noting that "[i]f there was an error in the instruction process, then [an importer] is entitled to a judgment ordering reliquidation pursuant to new, correct instructions . . . , *regardless* of whether the . . . entries are . . . deemed liquidated or actually liquidated" (emphasis added)); *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1309–10 (Fed. Cir. 2004) (importer is not "somehow required to seek an injunction to preserve its rights" where "its suit [is] not brought under [§ 1516a], and the injunction provisions of that statue [are] not available to it").

## III

Here, Commerce suspended liquidation pending the result of the administrative review of the antidumping duty order. Unfortunately, Customs liquidated the entries despite Commerce's instructions, so by the time the final results of the administrative results were published and interested parties challenged them, Carbon's three entries were already liquidated. Carbon could have pursued a remedy under § 1514 by protesting those erroneous liquidations. However, Carbon failed to pursue its § 1514 remedy because it failed to timely protest in 2008.

Carbon argues that protesting under § 1514 would not have been an adequate remedy because it could not have known the final rate until the Trade Court issued its final judgment. But the government argues, and the Trade Court agreed, that the protest could have been filed and action on the protest delayed until the final rate was available. We need not decide whether a remedy would

have been immediately available to Carbon to reverse the erroneous liquidations upon protest. Even if the implementation of a remedy for the erroneous liquidations had to await a final decision by the Trade Court in the antidumping proceeding (as the government contends), the protest remedy would have been adequate because it would have ultimately resulted in reliquidation at the proper rate.

Under our decision in *Juice Farms, Inc. v. United States*, 68 F.3d 1344 (Fed. Cir. 1995), Carbon's ability to protest the liquidation pursuant to § 1514 bars resort to § 1581(i). In *Juice Farms*, Commerce had suspended liquidation of Juice Farms Inc.'s ("Juice Farms") orange juice entries pending investigation and administrative reviews of an antidumping duty order. *Id.* at 1345. While the orders were in effect, Customs erroneously liquidated some of Juice Farms' entries. *Id.* Juice Farms only learned of the liquidations after the administrative review concluded, and so failed to timely protest the liquidations. *Id.* Noting that § 1514 "contemplates that both the legality and correctness of a liquidation be determined, at least initially, via the protest procedure," *id.* at 1346 (quoting *United States v. A.N. Deringer, Inc.*, 593 F.2d 1015, 1020 (CCPA 1979)), we held that "the importer[] bears the burden to check for posted notices of liquidation and to protest timely," and because Juice Farms did not, it "[could not] circumvent the timely protest requirement by claiming that its own lack of diligence requires equitable relief under 28 U.S.C. § 1581(i)," *id.* at 1346.[6]

---

[6]  *See also Alden Leeds Inc. v. United States*, 476 F. App'x 393, 395–96, 401 (Fed. Cir. 2012) (non-precedential) (holding that § 1581(i) was not available where importer did not file a protest of Customs' deemed liquidation of certain entries despite a suspension order from Commerce

*Shinyei* is not to the contrary. In *Shinyei*, Commerce had issued erroneous instructions that did not match the final results of an administrative review, and Customs liquidated some entries pursuant to the instructions. *See* 355 F.3d at 1300–03. Shinyei Corp. of America ("Shinyei") challenged the erroneous instructions, and we held jurisdiction under § 1581(i) was proper. *Id.* at 1305. There Shinyei's challenge was to Commerce's erroneous instructions to Customs, rather than an erroneous action by Customs pursuant to correct instructions by Commerce. *See id.* at 1309–10 ("Shinyei's challenge was aimed at Commerce *instructions*, not *determinations* reviewable under [§ 1516a]."). Because Shinyei had no alternative remedy, it could invoke § 1581(i) jurisdiction. *See id.* at 1305, 1311–12.

---

until Commerce published final results of an administrative review, well after the deadline in § 1514); *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1369, 1373–76 (Fed. Cir. 2002) (holding that protests to liquidations on the basis that they should have been liquidated at a deemed liquidation rate rather than a final rate could have been timely made under § 1514, but that since the protests were untimely, there was no jurisdiction under § 1581(i)); *US JVC Corp. v. United States*, 184 F.3d 1362, 1365 (Fed. Cir. 1999) (applying *Juice Farms* to "closely parallel" facts); *Omni U.S.A., Inc. v. United States*, 840 F.2d 912, 912–13, 915 (Fed. Cir. 1988) (holding that, where Customs failed to hold liquidation in suspense, and where importer failed to realize this had occurred, only requesting reliquidation later, the liquidation was final under § 1514 and a statutory deadline could not be tolled via § 1581(i)).

Carbon does not argue that bulletin notices of the liquidations were not posted, as is required by regulation. *See* 19 U.S.C. § 1500(e); 19 C.F.R. § 159.9.

Since Carbon is challenging Customs' allegedly erroneous liquidation rather than Commerce's allegedly erroneous instructions, *Shinyei* is inapplicable. As we explained in *Shinyei* itself: If "the error was in Customs' liquidation of the subject entries despite correct instructions . . . Shinyei's appropriate avenue for relief would be under 19 U.S.C. § 1514." *Id.* at 1302 n.2.

CONCLUSION

Because § 1581(a) was an available avenue of jurisdiction had Carbon timely protested Customs' alleged erroneous liquidation, Carbon cannot rely on § 1581(i) to secure Trade Court jurisdiction.

**AFFIRMED**

COSTS

Costs to the United States.