# United States Court of Appeals for the Federal Circuit

---

**JUANCHENG KANGTAI CHEMICAL CO., LTD.,
NAC GROUP LIMITED,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-2298

---

Appeal from the United States Court of International Trade in No. 1:17-cv-00257-RWG, Senior Judge Richard W. Goldberg.

---

SEALED OPINION ISSUED: July 15, 2019
PUBLIC OPINION ISSUED: August 7, 2019*

---

GREGORY S. MENEGAZ, DeKieffer & Horgan, PLLC, Washington, DC, argued for plaintiffs-appellants. Also represented by JAMES KEVIN HORGAN, ALEXANDRA H. SALZMAN.

SONIA MARIE ORFIELD, Commercial Litigation Branch,

---

\*    This opinion was originally filed under seal and has been unsealed in full.

Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOSEPH H. HUNT, JEANNE DAVIDSON, PATRICIA M. MCCARTHY; CATHERINE D. MILLER, Office of Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

_____

Before REYNA, WALLACH, and TARANTO, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellants Juancheng Kangtai Chemical Co., Ltd. ("Kangtai Chemical") and NAC Group Limited ("NAC") (together, "Kangtai") appeal from the opinion and order of the U.S. Court of International Trade ("CIT") dismissing its complaint. The CIT held, inter alia, that it lacked jurisdiction under 28 U.S.C. § 1581(i) (2012) to consider three counts raised in Kangtai's Complaint relating to certain antidumping duties. *See Juancheng Kangtai Chem. Co. v. United States* (*Kangtai*), 322 F. Supp. 3d 1351, 1356 (Ct. Int'l Trade 2018). We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5). We affirm.

BACKGROUND

I. Legal Framework

By statute, antidumping duties may be imposed on "foreign merchandise . . . being, or . . . likely to be, sold in the United States at less than its fair value." 19 U.S.C. § 1673 (2012).[1] Following an investigation into imposition

_____

[1]   In June 2015, Congress amended the statutes containing the antidumping provisions. *See* Trade Preferences Extension Act of 2015 ("TPEA"), Pub. L. No. 114-27, §§ 501–507, 129 Stat. 362, 383–88. Because the relevant determinations were made after the TPEA became effective, the TPEA applies. *See Ad Hoc Shrimp Trade Action*

of antidumping duties, if the U.S. Department of Commerce ("Commerce") and the U.S. International Trade Commission have made the requisite findings, Commerce "shall publish an antidumping duty order" directing U.S. Customs and Border Protection ("Customs") officers to assess duties on imports of goods covered by the investigation. *Id.* § 1673e(a); *see id.* §§ 1673, 1673a, 1677(1). Each year after the order is published, if Commerce receives a request for an administrative review of the antidumping duty order, it shall conduct such a review. *Id.* § 1675(a)(1)(B).

When conducting these reviews, Commerce typically must "determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise." 19 U.S.C. § 1677f-1(c)(1); *see Viet I-Mei Frozen Foods Co. v. United States*, 839 F.3d 1099, 1101 (Fed. Cir. 2016) (explaining that, when "it is not practical to determine individual rates for each" exporter or producer, "Commerce generally selects a subset of companies for mandatory review and determines an individual dumping rate for each of those mandatory respondents"). "A dumping margin reflects the amount by which the normal value (the price a producer charges in its home market) exceeds the export price (the price of the product in the United States) or constructed export price." *SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1220 (Fed. Cir. 2018) (internal quotation marks, footnote, and citation omitted); *see* 19 U.S.C. § 1677(35)(A).[2]

---

*Comm. v. United States* (*AHSTAC*), 802 F.3d 1339, 1348–52 (Fed. Cir. 2015). We cite to the U.S. Code version of the statute as there are no material changes in the TPEA for purposes of this appeal.

[2] "When the foreign producer or exporter sells directly to an *unaffiliated* purchaser in the United States, Commerce uses [export price] as the U.S. price for purposes

The statute explains how "normal value shall be determined" "[i]n order to achieve a fair comparison with the export price or constructed export price." 19 U.S.C. § 1677b(a). Relevant here, Commerce has found the People's Republic of China ("China") is a nonmarket economy country. *See SolarWorld*, 910 F.3d at 1220 n.3. A "nonmarket economy country" is "any foreign country that [Commerce] determines does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise." 19 U.S.C. § 1677(18)(A). "In antidumping duty proceedings involving merchandise from a non-market economy, . . . Commerce presumes that all respondents are government-controlled and[,] therefore[,] subject to a single country-wide rate," unless respondents "rebut this presumption" to demonstrate eligibility for separate rates, i.e., "individual dumping margins . . . for each known exporter or producer." *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343, 1349–50 (Fed. Cir. 2015) (footnote omitted) (citing, inter alia, 19 U.S.C. § 1677f-1(c)(1)).

## II. Procedural History

In 2005, Commerce published an antidumping duty order on chlorinated isocyanurates ("subject merchandise") from China. *Chlorinated Isocyanurates from the People's Republic of China* (*AD Order*), 70 Fed. Reg. 36,561, 36,561–

---

of the comparison." *Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1303 (Fed. Cir. 2001) (citation omitted). "However, where a sale is made by a foreign producer or exporter to an *affiliated* purchaser in the United States, the statute provides for use of [constructed export price] as the [U.S.] price for purposes of the comparison." *Id.* (citation omitted). The calculation of constructed export price, as compared to export price, is subject to certain "[a]dditional adjustments." 19 U.S.C. § 1677a(d).

62 (Dep't of Commerce June 24, 2005) (antidumping duty order).[3] Related to this appeal, Commerce conducted its ninth administrative review ("AR 9") of the *AD Order*, covering the period of review ("POR") from June 1, 2013, through May 31, 2014, and tenth administrative review ("AR 10"), covering the POR from June 1, 2014, through May 31, 2015. *See Chlorinated Isocyanurates from the People's Republic of China* (*AR 10 Final Results*), 82 Fed. Reg. 4852, 4852 (Dep't of Commerce Jan. 17, 2017) (final admin. review); *Chlorinated Isocyanurates from the People's Republic of China* (*AR 9 Final Results*), 81 Fed. Reg. 1167, 1167 (Dep't of Commerce Jan. 11, 2016) (final admin. review). In the *AR 9 Final Results*, Commerce assigned Kangtai Chemical, which had been selected by Commerce as a mandatory respondent, a 0% antidumping duty margin. 81 Fed. Reg. at 1168. In the *AR 10 Final Results*, Commerce assigned Kangtai Chemical, which again had been selected by Commerce as a mandatory respondent, an antidumping duty margin of 35.05%. 82 Fed. Reg. at 4852. Regarding both AR 9 and AR 10, Commerce explained that for the exporters individually reviewed, such as Kangtai Chemical, Commerce would require cash deposits at the antidumping duty margin rate calculated, but that "for all [Chinese] exporters of subject merchandise that have not been found to be eligible for a separate rate, the cash deposit rate will be the [China]-wide rate of 285.63[%]." *AR 10 Final Results*, 82 Fed. Reg. at 4853; *AR 9 Final Results*, 81 Fed. Reg. at 1168.

Following the *AR 9 Final Results*, in which Kangtai received a zero percent antidumping duty margin, Commerce

---

[3] The subject merchandise includes "derivatives of cyanuric acid, described as chlorinated s-triazine triones," that have "three primary chemical compositions" and "are available in powder, granular, and tableted forms." *AD Order*, 70 Fed. Reg. at 36,561.

issued liquidation instructions to Customs. *See* J.A. 101–04. The AR 9 liquidation instructions ordered Customs to assess a rate of $0.00 per metric ton on all shipments of subject merchandise "exported by [Kangtai Chemical], imported by or sold to" NAC, "and *entered*, or withdrawn from warehouse, for consumption during the period 06/01/2013 through 05/31/2014," which is the POR covered by AR 9. J.A. 102 (emphasis added). The AR 10 liquidation instructions similarly set liquidation rates in U.S. dollars per metric ton for shipments of subject merchandise based on the margins calculated in the *AR 10 Final Results* "exported by [Kangtai Chemical], imported by or sold to [specified purchasers, not including NAC], and entered, or withdrawn from warehouse, for consumption during the period 06/01/2014 through 05/31/2015." J.A. 106 For entries made during the POR associated with AR 10 "not covered" by the above instruction in the AR 10 liquidation instructions (thereby including exports by Kangtai Chemical imported by NAC), Commerce instructed Customs to "assess antidumping duties at the [China]-wide rate" of 285.63%. J.A. 106.

In October 2017, Kangtai filed its Complaint against the Government. J.A. 58. Kangtai asserted jurisdiction pursuant to § 1581(i)(2) and (i)(4). J.A. 59. According to Kangtai, Commerce improperly instructed Customs to assess an antidumping duty margin on eighteen of Kangtai's subject merchandise entries at a rate higher than the zero percent rate calculated for Kangtai's entries in the *AR 9 Final Results*. *See* J.A. 58, 63. Kangtai alleged that it made "sales [that] were invoiced at the end of" the POR associated with AR 9, but that the subject merchandise "*entered* the United States in the subsequent review," i.e., during the POR associated with AR 10. J.A. 58. According to Kangtai, Commerce "liquidated eleven of these entries," but seven remained unliquidated. J.A. 63. Kangtai alleged, inter alia, that: (1) Commerce "acted contrary to law when it assessed individual sales [at] an [antidumping

duty] rate that was higher than the rate calculated upon individual review" in AR 9, J.A. 63–64 (Count I); (2) Commerce's "decision to treat the sales as if they were made by the [China-wide entity] is unsupported by substantial evidence" because "those sales were made by Kangtai," J.A. 64 (Count II); and (3) Commerce's "decision that the NAC entries were not reviewed merely because they entered in the POR subsequent to the AR in which they were reviewed was unsupported by substantial evidence as well as arbitrary and capricious," J.A. 64 (Count III).[4]

The CIT held it lacked jurisdiction under § 1581(i). *Kangtai*, 322 F. Supp. 3d at 1356. The CIT explained "Kangtai cannot make out a [§] 1581(i) claim as the essence of its challenge remains directed at Commerce's use of sales and entries in its antidumping duty calculations," and this type of claim is properly brought under a different jurisdictional provision, specifically § 1581(c). *Id.* at 1358. It therefore dismissed Counts I–III of Kangtai's Complaint and entered final judgment in favor of the Government. *See id.* at 1356, 1360.

## DISCUSSION

### I. Standard of Review and Legal Standard

We review the CIT's jurisdictional determination de novo. *See Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018). "Although we review the decisions

---

[4] The Complaint also alleged, in Count IV, that Commerce's "decision to liquidate entries prior to the expiry of the [sixty] days permitted by law to lodge an appeal was unlawful and an unreasonable litigation tactic," thereby challenging Commerce's policy to issue liquidation instructions to Customs within fifteen days of publication of its final results of an administrative review. J.A. 65. Kangtai did not challenge the CIT's dismissal of Count IV in this appeal. *See generally* Appellants' Br.

of the CIT de novo, we give great weight to the informed opinion of the CIT and it is nearly always the starting point of our analysis." *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1341 (Fed. Cir. 2016) (internal quotation marks, brackets, ellipsis, and citation omitted). "The party invoking the CIT's jurisdiction bears the burden of establishing it. However, we must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1359 (Fed. Cir. 2016) (internal quotation marks, brackets, and citations omitted). In ascertaining whether jurisdiction is proper, we look to "the true nature of the action." *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (internal quotation marks and citation omitted).

The CIT's "jurisdiction is enumerated in 28 U.S.C. § 1581(a)–(j)." *Carbon Activated Corp. v. United States*, 791 F.3d 1312, 1314 (Fed. Cir. 2015); *see* 28 U.S.C. § 1581(a)–(j). Subsections (c) and (i) of § 1581 are relevant to this appeal. Section 1581(c) confers on the CIT "exclusive jurisdiction of any civil action commenced under" 19 U.S.C. § 1516a (2012),[5] which includes Commerce's annual administrative reviews of antidumping duty orders. *See* 19 U.S.C. §§ 1516a(a)(2)(B)(iii), 1675(a)(2)(C). Section 1581(i) sets forth the CIT's so-called "residual jurisdiction." *Carbon Activated*, 791 F.3d at 1314 (internal quotation marks omitted). Under this section, the CIT has

---

[5]    Congress amended § 1581(c) through Title IV of the Trade Facilitation and Trade Enforcement Act of 2015. *See* Enforce and Protect Act of 2015, Pub. L. No. 114-125, § 421(b), 130 Stat. 154, 168 (2016) ("EAPA"). EAPA expanded the CIT's § 1581(c) jurisdiction to include civil actions commenced under 19 U.S.C. § 1517 relating to evasion of antidumping and countervailing duty orders, *see id.*, but those amendments are not relevant here.

exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

> (1) revenue from imports or tonnage;
>
> (2) *tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue*;
>
> (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
>
> (4) *administration and enforcement* with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of [§ 1581].

28 U.S.C. § 1581(i) (emphases added).

The CIT's residual jurisdiction "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Sunpreme*, 892 F.3d at 1191 (citation omitted). "Where another remedy is or could have been available, the party asserting § 1581(i) jurisdiction has the burden to show that the remedy would be manifestly inadequate." *Id.* (citation omitted). A remedy is manifestly inadequate if it is "an exercise in futility," meaning it is "incapable of producing any result." *Hutchison*, 827 F.3d at 1362 (internal quotation marks and citation omitted).

## II. The CIT Properly Dismissed Kangtai's Claims for Lack of Jurisdiction

The CIT dismissed Counts I–III of the Complaint for lack of jurisdiction, explaining that "it is clear that the true nature of Kangtai's [C]omplaint aims to challenge

Commerce's evaluation of sales in AR 9 and entries in AR 10, a claim properly arising out of [§] 1581(c)." *Kangtai*, 322 F. Supp. 3d at 1356. According to the CIT, the Complaint alleges "that Commerce imposed a liquidation rate that improperly considered already reported sales and entries." *Id.* at 1357. The CIT rejected Kangtai's challenge "that the *sales* made during [the ninth POR]—and considered in AR 9—and then *entered* during [the tenth POR], should have been assigned the AR 9 rate but were improperly liquidated at the AR 10 rate," reasoning instead that "those eighteen *entries* went unreported in AR 10, even though they were entered during [the tenth POR]" based on Kangtai's failure to report them after being directed to do so by Commerce. *Id.* The CIT further determined that a remedy under § 1581(c) was not manifestly inadequate because Kangtai was "on notice" that duties would be assessed against its entries based on language in the *AR 9 Final Results* and could have filed "a complaint challenging the results of AR 9." *Id.* at 1358.

Kangtai argues "the CIT erroneously found that Kangtai's Complaint challenged the *AR 10 Final Results* and should therefore have been brought under [§] 1581(c)." Appellants' Br. 20 (italics added) (capitalization modified). Rather, Kangtai maintains that its challenge is to Commerce's liquidation instructions, which it asserts improperly imposed the China-wide entity liquidation rate of 285.63% "upon eighteen sales and the subsequent entries that were fully reported in AR 9." *Id.* at 20–21. Kangtai further avers that any remedy available to it under § 1581(c) "is manifestly inadequate" because Kangtai already received a zero percent margin in the *AR 9 Final Results*, meaning "there was nothing to appeal" there, and because filing a § 1581(c) action challenging the *AR 10 Final Results* "would not save [its eighteen entries at issue] from being liquidated at the [China]-wide rate." *Id.* at 27. Kangtai's analysis is incorrect.

Kangtai could have sought relief under § 1581(c) because the true nature of Kangtai's action is a challenge to Commerce's determination to assess antidumping duties on entries, rather than on sales, made during the relevant POR. In its Complaint, Kangtai alleges that "all eighteen . . . entries were governed by AR 9 because the *sales* in question were specifically reviewed and [antidumping duty] margins calculated in AR 9; not AR 10." J.A. 63 (emphasis added). According to Kangtai, Commerce improperly determined these sales were not subject to the AR 9 rate because they were entered during the POR corresponding to AR 10. *See* J.A. 58 ("Only because the sales were invoiced at the end of that period of review (and thus lawfully included therein) but *entered* the United States in the subsequent review were they actually assessed a punitive[ly] high [antidumping duty] margin that bore no relation to the actual[ly] calculated [antidumping duty] rate for those very sales."). The statute requires Commerce to conduct administrative reviews and "determine" the amount of antidumping duties, upon request, for "12-month period[s]." 19 U.S.C. § 1675(a)(1). For antidumping duty proceedings, "an administrative review under this section normally will cover, as appropriate, *entries*, exports, *or sales* of the subject merchandise during the [twelve] months immediately preceding the most recent anniversary month." 19 C.F.R. § 351.213(e)(1)(i) (2019) (emphases added). This regulation affords Commerce flexibility in deciding how to measure the twelve-month POR covered in an administrative review, whether it be based on date of entry, export, or sale. *See id.*

Here, Commerce repeatedly manifested its intent to rely on the date of entry for its assessment of antidumping duties. For instance, during AR 9, Commerce issued

questionnaires[6] asking Kangtai to "[r]eport each U.S. sale of merchandise *entered for consumption during the POR.*" J.A. 124 (emphasis added).  Although Commerce stated that "for [export price] sales" Kangtai could "report each transaction involving merchandise shipped during the POR," that exception applied only "if [it] do[es] not know the entry dates." J.A. 124.  Then, in the preliminary results of both AR 9 and AR 10, Commerce stated its intention to assess antidumping duty rates on *entries* made during the relevant POR, rather than on *sales*. *Chlorinated Isocyanurates from the People's Republic of China* (*AR 10 Preliminary Results*), 81 Fed. Reg. 45,128, 45,129 (Dep't of Commerce July 12, 2016) (prelim. admin. review) ("Upon issuing the final results of this review, [Commerce] shall determine, and [Customs] shall assess, antidumping duties on all *appropriate entries* covered by this review." (emphasis added) (footnote omitted)); *Chlorinated Isocyanurates from the People's Republic of China* (*AR 9 Preliminary Results*), 80 Fed. Reg. 39,060, 39,061 (Dep't of Commerce July 8, 2015) (prelim. admin. review) (same).  Although Commerce used the phrase "appropriate entries covered by this review," *AR 10 Preliminary Results*, 81 Fed. Reg. at 45,129; *AR 9 Preliminary Results*, 80 Fed. Reg. at 39,061, we conclude this language is sufficiently clear to put Kangtai on

---

[6]   "Commerce issues detailed nonmarket economy questionnaires to foreign respondents in the [administrative review] proceedings to gather information from which to calculate dumping margins." *AHSTAC*, 802 F.3d at 1342 n.3 (citing 19 C.F.R. §§ 351.221, 351.301(c)(1)).  "These questionnaires are divided into sections:  Section A covers general corporate information, including corporate and business structure, affiliations with other companies, and ownership details; Section C covers U.S. sales data; and Section D covers production data.  Commerce may issue supplemental questionnaires if additional information is required." *Id.*

JUANCHENG KANGTAI CHEMICAL CO. v. UNITED STATES

notice that Commerce intended that Customs assess duties on entries made during each relevant POR. This is because the respective preliminary results identify the relevant POR and must be read in context of the previously issued questionnaires discussed above. *See AR 10 Preliminary Results*, 81 Fed. Reg. at 45,129 (identifying the POR as "June 1, 2014, through May 31, 2015"); *AR 9 Preliminary Results*, 80 Fed. Reg. at 39,060 (identifying the POR as "June 1, 2013, through May 31, 2014"). Indeed, Commerce's decision to rely on entries accords with its standard practice. *See Norsk Hydro*, 472 F.3d at 1350 ("Commerce typically restricts its consideration to entries made during the one year [POR].").[7]

During the administrative proceedings, Kangtai did not directly challenge Commerce's decision to rely on entries, *see* Reply Br. 17–18; *see also* Oral Arg. at 0:11–1:10, http://oralarguments.cafc.uscourts.gov/default.aspx?fl= 2018-2298.mp3, even though it could have, *see* 19 C.F.R. §§ 351.309(c)(1)(ii) (stating an interested party may submit a case brief with Commerce within "30 days after the date of publication of the preliminary results of review"), (c)(2) ("The case brief must present all arguments that continue in the submitter's view to be relevant to

---

[7]    In response to Commerce's questionnaires, Kangtai reported sale date, rather than entry date. *See, e.g.*, J.A. 126, 141–44. Simply because Commerce accepted Kangtai's responses and *calculated* antidumping duty margins based on *sales* made during the POR does not, on its own, undermine the other indications that Commerce was planning to *assess* duties on *entries*. If Kangtai wanted to challenge Commerce's decision to assess duties on entries on the basis that doing so would be at odds with its reliance on sales for calculation purposes, it could have raised that issue to Commerce and then to the CIT in a challenge under § 1581(c), as discussed below.

[Commerce]'s . . . final results . . . ."). Accordingly, in the *AR 9 Final Results* and *AR 10 Final Results*, Commerce maintained its position that Customs should assess duties "on all appropriate entries of subject merchandise" made during the POR "in accordance with the final results." *AR 10 Final Results*, 82 Fed. Reg. at 4852; *see AR 9 Final Results*, 81 Fed. Reg. at 1168 (providing that Customs should assess duties "on all appropriate entries covered by this review"). Because § 1581(c) confers on the CIT jurisdiction to consider challenges to Commerce's assessment of antidumping duties based on its determination during administrative reviews, *see* 28 U.S.C. § 1581(c); *see also* 19 U.S.C. §§ 1516a(a)(2)(B)(iii), 1675(a)(2)(C), Kangtai could have availed itself of § 1581(c) jurisdiction by challenging Commerce's decision to assess margins on entries in either the *AR 9 Final Results* or *AR 10 Final Results*.[8]

Furthermore, Kangtai has failed to meet its burden of demonstrating that relief under § 1581(c) would have been manifestly inadequate. Not only could Kangtai have challenged Commerce's decision to assess duties on entries in the *AR 9 Final Results* or the *AR 10 Final Results*, Kangtai actually did file a complaint contesting the *AR 10 Final Results*. *See* Compl., *Heze Huayi Chem. Co. v. United States*, No. 1:17-cv-00032-RKM (Ct. Int'l Trade Feb. 15, 2017), ECF No. 7. However, in that litigation, Kangtai alleged only that Commerce improperly calculated its antidumping duty rate, *see id.* ¶¶ 15–20 (arguing that Commerce improperly selected a surrogate country and certain

---

[8]    In at least three cases, the CIT has considered similar challenges under its § 1581(c) jurisdiction. *See Watanabe Grp. v. United States*, 34 C.I.T. 1545, 1548–49 (2010); *Corus Staal BV v. United States*, 387 F. Supp. 2d 1291, 1295, 1300–04 (Ct. Int'l Trade 2005); *Helmerich & Payne, Inc. v. United States*, 24 F. Supp. 2d 304, 306, 311–13 (Ct. Int'l Trade 1998).

surrogate financial ratios), but did not challenge Commerce's decision to assess duties on entries made during the POR, *see generally id.* When a party files an action challenging Commerce's final results in an administrative review of an antidumping duty order, it may seek a statutory injunction from the CIT, thereby preventing liquidation of its entries while the litigation is pending. *See* 19 U.S.C. § 1516a(c)(2) (explaining the CIT "may enjoin the liquidation of some or all entries of merchandise covered by a determination of . . . [Commerce] . . . upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances"). Had Kangtai filed suit and alleged that Commerce should have provided that its AR 9 and AR 10 decisions applied to all entries on sales made during the POR, even if the entries occurred later, it could have timely sought an injunction to prevent liquidation of all eighteen entries of subject merchandise until the CIT could resolve the merits of Kangtai's position. *See id.* Because filing an action could have provided Kangtai the very relief it now seeks—the prevention of liquidation at an improper rate, *see* J.A. 65—we cannot say that a remedy under § 1581(c) would have been "an exercise in futility" and therefore manifestly inadequate, *Hutchison,* 827 F.3d at 1362. Thus, the CIT lacked § 1581(i) jurisdiction over Counts I–III of Kangtai's Complaint.

We find Kangtai's counterargument that "the CIT misapplied the standard of review" and drew factual "inferences in favor of the" Government, rather than Kangtai, unavailing. Appellants' Br. 17 (capitalization modified). Specifically, Kangtai criticizes the CIT's characterization of Commerce's request for information in its Section C questionnaire for U.S. sales, *see id.* at 17–18; however, the CIT's recitation of the facts simply quoted from Commerce's questionnaire, *see Kangtai,* 322 F. Supp. 3d at 1354 ("Commerce issued a questionnaire to Kangtai during AR 9 requesting that Kangtai 'prepare a separate computer data

file containing each sale made during the POR' and '[r]eport each U.S. sale of merchandise entered for consumption during the POR.'" (quoting J.A. 124)). We do not detect error in the CIT's reliance on the record documents. Here, the CIT properly recognized that Commerce's Section C questionnaire sought entry dates, and, alternatively, sale dates. Although "only uncontroverted factual allegations are accepted as true for purposes of" deciding a motion to dismiss for lack of subject matter jurisdiction, *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted), it is certainly uncontested that the questionnaire contained those questions, *see Kangtai*, 322 F. Supp. 3d at 1354; J.A. 124.

Kangtai also argues "the CIT's finding that 'Kangtai's response attached an exhibit identifying sales and the corresponding entry dates for those sales' was clearly erroneous." Appellants' Br. 18 (quoting *Kangtai*, 322 F. Supp. 3d at 1354). Although the CIT erred when it made this finding in the background section of its opinion because Kangtai's Section C questionnaire response did not provide entry dates, *see* J.A. 126, 141–44, the CIT simply did not rely on this factual error as a material part of its legal analysis, *see Kangtai*, 322 F. Supp. 3d at 1356–59. Accordingly, we reject Kangtai's contention.

CONCLUSION

We have considered Kangtai's remaining arguments and find them unpersuasive. The Final Judgment of the U.S. Court of International Trade is

**AFFIRMED**