# United States Court of Appeals for the Federal Circuit

---

**WANXIANG AMERICA CORPORATION,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-1044

---

Appeal from the United States Court of International Trade in No. 1:18-cv-00120-GSK, Judge Gary S. Katzmann.

---

Decided: September 2, 2021

---

MICHAEL EDWARD ROLL, Roll & Harris LLP, Los Angeles, CA, argued for plaintiff-appellant. Also represented by BRETT HARRIS, Washington, DC.

STEPHEN CARL TOSINI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JEFFREY B. CLARK, JEANNE DAVIDSON, PATRICIA M. MCCARTHY; NIKKI KALBING, United States Department of Commerce, Washington, DC.

---

Before MOORE, *Chief Judge\**, REYNA and TARANTO, *Circuit Judges.*

REYNA, *Circuit Judge.*

Appellant Wanxiang America Corporation appeals a judgment of the United States Court of International Trade determining that it lacks jurisdiction over Appellant's action under 28 U.S.C. § 1581(i), and that Appellant's claims concerning a United States Department of Commerce memorandum are not ripe for judicial review because the memorandum is not a final agency action. We hold that the Court of International Trade does not have jurisdiction under § 1581(i) because Appellant could have sought relief under another subsection of § 1581, and Appellant has not shown that such relief would have been manifestly inadequate. We do not reach the issue on finality of the memorandum. Affirmed.

BACKGROUND

This appeal involves a complicated and technical administrative record concerning how antidumping duties are determined, assessed, and collected. The record also involves Pre-Penalty and Penalty Notices issued to U.S. importers whom the U.S. Customs and Border Protection ("Customs") has determined are in violation of U.S. customs laws and regulations governing imports of goods that are subject to antidumping duties. The United States Court of International Trade ("CIT") provided a thorough and detailed review of the record, so we forgo repeating that recitation here and reference only those aspects of the record that are pertinent to the main issue on appeal, the jurisdiction of the CIT.

---

\*    Chief Judge Kimberly A. Moore assumed the position of Chief Judge on May 22, 2021.

Plaintiff-Appellant Wanxiang America Corporation ("Wanxiang") is a U.S. importer for its parent corporation, Wanxiang Group Corporation ("Wanxiang Group"), an automotive parts manufacturing company headquartered in China. J.A. 141. The history leading to this appeal involves additional Wanxiang Group subsidiaries, including two of its Chinese exporters, Wanxiang Import and Export Co., Ltd. ("Wanxiang IE"), and Wanxiang Qianchao Co., Ltd. ("Wanxiang Q"). J.A. 42–43.

From 1994 to 2001, Wanxiang Group and Wanxiang IE participated in annual administrative reviews conducted by the U.S. Department of Commerce ("Commerce") that covered entries of first-generation wheel hub assemblies that were subject to a 1987 antidumping duty order on tapered roller bearings ("TRBs") from China. J.A. 40–42; *see* Tapered Roller Bearings From the People's Republic of China; Final Determination of Sales at Less Than Fair Value, 52 Fed. Reg. 19,748 (May 27, 1987) ("TRB Antidumping Duty Order"). As a result of those reviews, Wanxiang Group and Wanxiang IE were assigned company-specific antidumping duty rates of zero percent. J.A. 41, 60. This means that although imports from those two related companies were subject to the TRB Antidumping Duty Order, they were found not to be dumping and, therefore, received zero-percent dumping rates. Wanxiang Q, on the other hand, did not receive a company-specific antidumping duty rate because, as the record shows, it did not participate in the reviews. J.A. 60.

Wanxiang later imported second- and third-generation wheel hub assemblies from Wanxiang Q, and on the customs entry forms, it classified the entries as not subject to any antidumping duty order. *See* J.A. 43–44; Appellant's Opening Br. 14. It is undisputed that a 2010 scope inquiry conducted by Commerce determined the second- and third-generation wheel hub assemblies were within the scope of the TRB Antidumping Duty Order. J.A. 574–75; *see also Power Train Components, Inc. v. United States*, 911 F.

Supp. 2d 1338 (Ct. Int'l Trade 2013), *aff'd mem.*, 565 F. App'x 899 (Fed. Cir. 2014).

In June 2012, Customs initiated an audit of Wanxiang's entries of wheel hub assemblies during the five-year period of October 1, 2007, to September 30, 2012. J.A. 141–42, 575–76.  Due to the large number of entries made by Wanxiang during the review period, Customs chose to analyze a statistical sample of 100 entries. J.A. 137, 142.

During the audit, Wanxiang suggested that Wanxiang Q was subject to Wanxiang Group's zero-percent antidumping duty rate.[1]  J.A. 44–45, 151.  On February 25, 2015, Commerce sent Customs a report titled "Guidance to CBP."  J.A. 59–60.  The report was sent "[i]n response to [Customs'] inquiry" and was based on Commerce's "review" of "documents previously sent to [Customs]," which had been submitted during the annual administrative review periods from 1994–2001.  J.A. 60.  Commerce explained that none of the documents from the relevant review periods "clearly identified [Wanxiang Q] itself as being a manufacturer or exporter of subject merchandise."  *Id.*  Commerce further confirmed that upon its examination of the records from the reviews, "no evidence . . . suggested that [Wanxiang Q] exported the subject merchandise during the relevant [periods of review]."  *Id.*

On September 2, 2015, Customs issued its final audit report, finding that some of the audited entries were imports of wheel hub assemblies from Wanxiang Q.  *See* J.A. 143, 148–49, 577.  But since Wanxiang Q did not

---

[1]    It also appears that Wanxiang maintained, alternatively, that it had no reason to believe that the newer-generation wheel hub assemblies were subject to the TRB Antidumping Duty Order.  *See* Appellant's Opening Br. 7–15.

participate in the relevant annual reviews (as indicated in the Guidance to CBP), it never received a company-specific dumping rate. J.A. 148–49. As a result, Customs determined that the Wanxiang Q imports were subject to the China country-wide rate of 92.84% *ad valorem*, the rate applicable to Chinese companies that otherwise did not receive a company-specific rate. *Id.* Customs also determined, based on the sampling results and a projection over the sampling frame, that Wanxiang had underpaid dumping duties by a significant amount. J.A. 143, 148. After the final audit report was issued, representatives from Wanxiang and the Wanxiang Group met with the Secretary of Commerce and the Under Secretary of Commerce for International Trade to discuss the audit. J.A. 70.

On May 25, 2016, Customs Liaison Unit placed a memorandum on the record ("CLU Memo"). J.A. 58. Three documents were attached to the CLU Memo: (1) Commerce's February 2015 Guidance to CBP; (2) a corporate organizational chart provided by Wanxiang Group that was previously attached to the Guidance; and (3) a June 2013 announcement in which Commerce noted that two Wanxiang Group subsidiaries[2] (but not Wanxiang Q) were subject to the zero-percent rate. J.A. 58–64. The CLU Memo described the Guidance to CBP as providing guidance "regarding the entities in the 1994–2001 administrative review periods that were entitled to the Wanxiang Group['s] cash deposit rate" of zero percent. J.A. 58. The CLU Memo also stressed that the information provided therein did "not constitute new factual information on the record of this closed segment of the proceeding." *Id.*

Almost two years later, in January 2018, Customs issued a Pre-Penalty Statement notifying Wanxiang that it may be liable for paying lost revenue (antidumping duties) and a substantial penalty for misclassification of entries

---

[2]     Those entities are not relevant to this appeal.

and failure to pay antidumping duties.  J.A. 107–10.  In April 2019, Customs issued a Penalty Notice demanding that Wanxiang pay specific amounts in lost revenue and penalties.  Appellant's Opening Br. 20–21.  Notably, Wanxiang did not protest the Penalty Notice pursuant to 19 U.S.C. § 1514, and Wanxiang has not made payment on the dumping duties or the penalty.  Oral Arg. 7:40–59, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1044_11032020.mp3.  Instead, Wanxiang chose to challenge the Penalty Notice by suing Commerce.

## CIT ACTION

On May 23, 2018, Wanxiang filed a complaint before the CIT, asserting jurisdiction under 28 U.S.C. § 1581(i)(2) and (4).[3]  J.A. 37.  Specifically, Wanxiang alleged that the

---

[3]    Congress later amended 28 U.S.C. § 1581(i) to redesignate subparagraphs (1) through (4) as subparagraphs (1)(A) through (1)(D), respectively. *See* United States-Mexico-Canada Agreement Implementation Act, Pub. L. No. 116–113, § 423(a)(1), 134 Stat. 11, 65 (2020).  The relevant § 1581(i) subsections, now (1)(B) and (1)(D), provide:

(i) (1) In addition to the jurisdiction conferred upon the [CIT] by subsections (a)–(h) of [§ 1581] . . . , the [CIT] shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for— . . .

  (B)  tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue; . . . or

  (D)  administration and enforcement with respect to the matters referred to in [§ 1581].

28 U.S.C. § 1581(i).

Guidance to CBP issued by Commerce violated Due Process and was otherwise contrary to law or unsupported by substantial evidence. J.A. 51–54. Wanxiang sought a remand for Commerce to "reconsider[]" whether Wanxiang Q was entitled to the Wanxiang Group zero-percent dumping rate. J.A. 55.

The government moved to dismiss for lack of subject-matter jurisdiction. *See Wanxiang Am. Corp. v. United States*, 399 F. Supp. 3d 1323, 1330 (Ct. Int'l Trade 2019). The CIT granted the motion after concluding, among other things, that it lacked jurisdiction under § 1581(i) because the relief sought by Wanxiang "could have been available under a . . . § 1581(c) action." *Id.* at 1331–32. The CIT held that because Wanxiang could have sought relief through § 1581(c), Wanxiang could not now assert residual jurisdiction through § 1581(i). *Id.* Wanxiang appeals the dismissal. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review the CIT's grant of a motion to dismiss de novo. *Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1345 (Fed. Cir. 1995). This court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the claimant. *Hartford Fire Ins. Co. v. United States*, 772 F.3d 1281, 1284 (Fed. Cir. 2014). A party invoking the CIT's jurisdiction has the burden of establishing that jurisdiction. *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).

This court has long held that § 1581(i) is a statute of residual jurisdiction that may not be invoked where jurisdiction is or could have been available under any other subsection of § 1581, unless such other relief would be manifestly inadequate. *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987) (collecting cases); *accord, e.g.*, *Ford Motor Co. v. United States*, 688 F.3d 1319, 1323 (Fed. Cir. 2012). Thus, when assessing jurisdiction under § 1581(i), we primarily consider (1) whether

jurisdiction under a subsection other than § 1581(i) was available, and (2) if so, whether the remedy provided under that subsection is "manifestly inadequate." *Erwin Hymer Grp. N.A., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019).

As a threshold matter, we note that Wanxiang does not argue in its opening brief that relief under another subsection of § 1581 would be manifestly inadequate. Nor did Wanxiang raise a "manifestly inadequate" argument at the CIT. *Wanxiang*, 399 F. Supp. 3d at 1331 n.10. Given these circumstances, we find that Wanxiang has waived or forfeited the argument that any other relief that may have been available to it was manifestly inadequate. *See Optivus Tech., Inc. v. Ion Beam Applications S.A.*, 469 F.3d 978, 989 (Fed. Cir. 2006) ("An issue not raised by an appellant in its opening brief is waived." (citation and alterations omitted)); *see also Indus. Chems., Inc. v. United States*, 941 F.3d 1368, 1373 n.3 (Fed. Cir. 2019) (deeming § 1581(i) argument waived on appeal where appellant did not raise issue before the CIT). Therefore, the only question we must decide is whether jurisdiction "is or could have been available" under any other subsection of § 1581. *Miller & Co.*, 824 F.2d at 963.

We hold that the CIT lacks subject-matter jurisdiction under § 1581(i) because Wanxiang could have sought relief under another subsection of § 1581. In essence, Wanxiang is protesting having to pay antidumping duties and penalties on entries identified during the customs audit. *See* J.A. 55. But Wanxiang could have challenged the assessments by pursuing a protest under 19 U.S.C. § 1514 ("Protest Against Decisions of Customs Service") and then, if unsuccessful, by challenging unfavorable results before the CIT under § 1581(a).⁴ Alternatively, Wanxiang could have

---

⁴     Subsection 1581(a), which governs the CIT's jurisdiction to review Customs' treatment of protests, sets forth

initiated a test shipment and sought, as a new shipper, an administrative review of the entries. During the review, Wanxiang would have had the opportunity to argue the issues it raised in its complaint before the CIT. In addition, the results of the administrative review could have been challenged before the CIT pursuant to 19 U.S.C. § 1516a, invoking jurisdiction of the CIT under § 1581(c).[5]

Wanxiang concedes it could have sought administrative review and then challenged unfavorable results at the CIT under § 1581(c). Oral Arg. at 4:15–46; 4:54–5:03; 5:28–6:30. Wanxiang, however, asserts § 1581(i) jurisdiction because, in its view, it was not legally compelled to take that route. *Id.* at 6:22–30 ("Yes, [Wanxiang] could have done all of that. There's no question they could have done all of that. The question, though, is: Were they required to do all of that?"). But Wanxiang misapprehends the § 1581(i) standard, which asks only whether another route under § 1581 existed that was not manifestly inadequate. It is true that Wanxiang had the choice of whether or not to file a protest or seek an administrative review, but having made the choice not to do so, the relief it seeks now

---

an express scheme for administrative and judicial review of Customs' penalty actions. Under this statutory scheme, an aggrieved party must first file a protest with Customs under 19 U.S.C. § 1514 before it can file suit in the CIT under § 1581(a) to contest denials. *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1326–27 (Fed. Cir. 2006).

[5]     Subsection 1581(c) grants the CIT exclusive jurisdiction over any civil action commenced under 19 U.S.C. §§ 1516a or 1517. *See* 28 U.S.C. § 1581(c). This includes the "jurisdiction to consider challenges to Commerce's assessment of antidumping duties based on its determination during administrative reviews." *Juancheng Kangtai Chem. Co. v. United States*, 932 F.3d 1321, 1329 (Fed. Cir. 2019).

under § 1581(i) is foreclosed. An importer may not simply "elect to proceed under [§] 1581(i), without having first availed himself of the remedy provided by [§] 1581(c)." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193 (Fed. Cir. 2018) (quoting *JCM, Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000)).

An importer cannot successfully assert § 1581(i) jurisdiction via "creative pleading." *Id.* (quoting *Norsk*, 472 F.3d at 1355). This court will "look to the true nature of the action" brought before the CIT under § 1581(i) to determine whether the action could have been brought under another subsection of § 1581. *Id.* (quoting *Norsk*, 472 F.3d at 1355). For instance, in *Sunpreme*, the importer sought a refund of cash deposits, an end of suspension of liquidation, and release from having to make future cash deposits, all of which we found to be "the very relief associated with a scope ruling determination." *Id.* Despite its pleading, it was clear that Sunpreme sought "a decision that its products [we]re not subject to the scope of the [antidumping duty] orders," so we reversed the CIT's exercise of § 1581(i) jurisdiction because Sunpreme had available to it relief under § 1581(c). *Id.* at 1193–94.

Similarly, in *Juancheng Kangtai Chemical Co. v. United States*, we affirmed the CIT's dismissal for lack of jurisdiction because jurisdiction was available to Kangtai under § 1581(c). 932 F.3d 1321, 1328–29 (Fed. Cir. 2019). Although Kangtai asserted jurisdiction under § 1581(i)(2) and (4)—as Wanxiang does here—we observed that the "true nature" of Kangtai's action was to protest Commerce's assessment of antidumping duties on entries, and it could have sought relief under § 1581(c). *Id.* at 1328. Further, we determined that Kangtai failed to demonstrate such relief would have been manifestly inadequate. *Id.* at 1329–30. Thus, despite Kangtai's attempt to base its action in § 1581(i), we held that such jurisdiction was unavailable.

Here, the true nature of Wanxiang's complaint is that Wanxiang seeks to avoid paying antidumping duties and a penalty assessed against it via a Penalty Notice. *See* J.A. 55. The bases of its complaint are issues routinely first brought up and challenged in protest proceedings and administrative reviews. *See, e.g.*, *Guizhou Tyre Co. v. United States*, No. 17-00100, 2021 WL 1944431 (Ct. Int'l Trade May 14, 2021); *Husteel Co. v. United States*, No. 19-00107, 2021 WL 1740367 (Ct. Int'l Trade May 3, 2021).

## CONCLUSION

We agree with the CIT that Wanxiang chose to forgo available avenues to administrative relief that could have resulted in the CIT's proper exercise of jurisdiction under § 1581(a) or (c). Wanxiang does not argue that such relief under those subsections would have been manifestly inadequate. As a result, Wanxiang cannot now avail itself of the CIT's residual jurisdiction under § 1581(i). The CIT therefore properly dismissed this case for lack of subject-matter jurisdiction. Because the CIT lacked jurisdiction under § 1581(i), we do not reach the questions concerning the finality of the CLU Memo. The judgment of the CIT is affirmed.

**AFFIRMED**